RECEIVED
JUL 0 5 2023
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DES MOINES DIVISION

RUSSELL LARSON,  

    Plaintiff,

Vs.

BETH SKINNER, WILLIAM SPERFSLAGE,
SEAN HOWARD, SEAN CRAWFORD,
SARA VAN MAAREN, KURSHA _____
KELLY ROBSON, RHONDA LANSER,
DR. _____ PHILLIPELLI, DR. _____
KIUPER, and ALL OTHER
UNNAMED MEDICAL PERSONNEL WITHIN
THE IOWA DEPARTMENT OF CORRECTIONS,

    Defendants.

CASE NO; 4:23-CV-00175-RGE-HCA

COMPLAINT

## I. PARTIES TO THE COMPLAINT

### A. THE PLAINTIFF

1. The Plaintiff _Russell Larson_ is an inmate at the Newton Correctional Facility, herein after NCF, and was transferred to Iowa Department of Corrections herein after IDOC.

The address of the current institution is P.O. Box 218, Newton, Iowa, 50208.

### B. THE DEFENDANTS

1. The defendant Beth Skinner is the Director of the IDOC, and was at all times during this Plaintiff's incarceration had full knowledge, control and oversaw the daily operations of all the prisons in Iowa.

2. The defendant William Sperfslage is the Deputy Director of the IDOC, and was at all times during this Plaintiff's incarceration had full knowledge, control and oversaw the daily operations of all the prisons in Iowa.

1

3. The defendant Sean Howard is the Warden of the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge and control of NCF and oversaw the daily operations of all the functions and departments within NCF.

4. The defendant Sean Crawford is the Deputy Warden of the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge and control of NCF and oversaw the daily operations of all the functions and departments within NCF.

5. The defendant Sara Van Maaren is the Head of the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge information and control of all the medical and health management protocols and oversaw the daily operations of all the functions of the medical department within NCF.

6. The defendant Kursha _____ is a nurse in the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge, information and control of all the medical and health management protocols the daily operations of all the functions of the medical department within NCF.

7. The defendant Kelly Robson is a nurse in the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge, information and control of all the medical and health management protocols the daily operations of all the functions of the medical department within NCF.

8. The defendant Rhonda Lanser is a nurse in the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge, information and control of all the medical and health management protocols the daily operations of all the functions of the medical department within NCF.

9. The defendant Dr. _____ Kuiper is a medical doctor in the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge, information and control of all the medical and health management protocols the daily operations of all the functions of the medical department within NCF.

10. All the other unknown or unnamed defendants within the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge, information and control of all the medical and health management protocols the daily operations of all the functions of the medical department within NCF.

11. The defendant Dr. _____Phillipelli, was a medical doctor in the Health Services Department at the NCF prison, and was at all times during this Plaintiff's incarceration had full knowledge, information and control of all the medical and health management protocols the daily operations of all the functions of the medical department within NCF. This medical doctor was replaced for his bad medical advice and practices with the current Dr. Kuiper.

12. All the defendants are being sued in both their official and individual capacities for the ongoing negligent medical treatment and the total disregard for the Plaintiff's basic and critical medical needs of all his accumulating medical conditions.

## II. BASIS FOR JURISDICTION

A.

13. The Plaintiff is bringing this Complaint under 42 U.S.C. § 1983, on the state or local officials of the Iowa Department of Corrections and at the Newton Correctional Facility.

B.

14. The Plaintiff states and argues that he is bringing this action on the above listed defendants for the violation of Cruel and Unusual Punishment under the Eighth Amendment as he is being made to suffer from severe and ongoing pain due to the lack of any medical care other than that of being seen by the NCF medical staff and them taking his vitals daily and only prescribing more and more medications.

C.

15. Not applicable this section, it is "NOT" a Bivens action.

D.

16. Each defendant has acted under the color of law as the Iowa Department of Corrections has many Medical and Health Services Policies dictating the care that will be provided an inmate. These policies s state above are governed by Iowa Code 2B. Each individual has either denied the grievances the Plaintiff has submitted or has stopped the necessary care as the IDOC does not follow the UIHC specialist's medical reviews and proscribed treatments and other medical advice to advance their own medical treatment which is always lowered to the least amount of care that they can give due to concerns they always state as being a security issue or the usual NCF staff catch all is their budget concerns. These individuals are all listed in the caption of this action as all had a part or a major role in denying the Plaintiff proper or needed medical treatment for so long that he now suffers from cancer which is not being treated, more regimental diabetes treatment and other major medical issues as seen the attached documents with this action. Even after the UIHC diagnosed some type of medical treatment or aid, the NCF staff took days to fulfill this recommendation from UIHC. Simple things like giving him a blown up air pillow to sit on for his hemorrhoids, a cane and a walker that took some time to get. These simplest things show the total disregard for proper medical care and then to get these things, the NCF medical staff has to get the in house doctor to approve it and then it gets reviewed by the head doctor at IMCC who has never seen the plaintiff in person to assess his medical condition before he approves or

denies the prescribed medical need. These actions support the constitutional rights of the Plaintiff being denied him under the Eighth Amendment cruel and unusual punishment and the lack of care supports this action. The constitutional rights under the Fourteenth Amendment as the NCF staff are violating clearly established state law in not giving the Plaintiff proper medical treatment for his severe and chronic medical needs.

17. The Plaintiff does ask that if it is possible for this court to combine this case with the Northern District Case of 6:21-cv-02018-LTS, he moves this court to have this action merged with the one in the Northern District as it has all of the many medical documents and other medical records already on file with that case which the Plaintiff feels would give that court better review of all of the issues as the issues in that case of 6:21-cv-02018-LTS, is where the inflicted harm has started from, but if this court needs to have the review done on the NCF prison in this jurisdiction, the Plaintiff asks that it reviews the medical records in the case of 6:21-cv-02018-LTS for the ongoing medical neglect he is suffering from at NCF.

### III. Prisoner Status

18. The Plaintiff states that he is a convicted and sentenced state prisoner.

### IV. Statement of Claim

A.

19. The Plaintiff states that this action in the Federal Court in the Southern District of Iowa is being brought under the directive of the Federal District Court in Northern Iowa as they do not have jurisdiction over the actions of the Newton Correctional Facility, hereinafter (NCF), medical staff. The plaintiff has another Civil Complaint on file at the Federal District Court in Sioux City, Iowa. Judge Strand is the judge on this suit. That suit pertains to the actions and inactions of the Buchanan County Jail. Pursuant to a ruling from the Federal Northern District Court, the issues with the prison medical staff at NCF has to be filed within this Southern Court's jurisdiction.

20. The Plaintiff began suffering from many of these issues while being held in the Buchanan County Jail. The diabetes and the hemorrhoids along with all the other medical issues that are plaguing the Plaintiff started there. The accompanying medical documents will show the court the many other medical issues that are not being properly or are only being done to allow the prison to have several log entries so they may claim that they had seen the Plaintiff on a regular basis for his conditions which does not have any medal treatment value to them. The jail has only pacified the Plaintiff for their own goals as they only waited until he was convicted and got him transferred right way to the Iowa Medical and Classification Center (IMCC) in Oakdale, Iowa so they did not have to spend any more time or money for more attentive and assertive medical care for these ongoing medical issues.

21. The issues all have been problems that arose from outside the prison, but were left unattended by the Buchanan County Jail, as they knew he was being transferred to the IDOC, and they left the medical issues to be treated by the IDOC.

22. The dates he was held at the county jail where from; September 2020 to May, 8, 2021.

23. The jail using the most minimum of care, such as seeing him multiple times and prescribing more and more medications has escalated these medical issues into some very severe and chronic medical concerns that the NCF staff fail to do any real treatment on the Plaintiff.

24. This further exasperates these medical conditions, as the jail had a doctor who the Plaintiff had as his family physician see him for the many medical problems that were being brought on while he was in jail. This same doctor who the plaintiff felt was a very qualified doctor and had used him while on the street, did the least amount of care he had ever seen him do and felt that the county jail had brought him in to see the Plaintiff only to pacify him until they could transfer him out. The doctor did no more than what he was directed to do as he was being paid by the jail through the sheriff's directive and other than see the Plaintiff no real medical treatment was done expect to keep pushing higher doses of medications on the Plaintiff until transferred. The doctor's fees and his medical treatment and care where being done through the sheriff and not the Plaintiff at this point and therefore the medical care was only adequate enough to appease the sheriff and the jail's medical staff to prolong the suffering at some type of minimum care until they could get him out of the jail and to IMCC for them to handle the medical care.

25. The list of health issues are as follows;

a. Right foot plus the ankle and toes had stinging and burning in them. Notified on 10/25/20

b. The hemorrhoids issues were reported on 10/25/20

c. The issue of having worms in the Plaintiff's bowels was found on 2/15/21

d. The Plaintiff began to spit up blood on 2/15/21

e. The Plaintiff's legs and hands with numbness and burning was found on 3/3/21

f. The Plaintiff had a broken tooth, along with face burning, and ears ringing and his head pounding on 3/  /21

g. He then had more tooth pain on 4/1/21

h. More broken teeth to be extracted

i. The Plaintiff has had chest pains, and shortness of breath.

26. The numerous issues of all the medical problems all started at the county jail and have only been exasperated by the poor medical attention here at NCF.

27. The Plaintiff may now have to have his legs amputated due to the neglectful treatment of the diabetes.

28. The jail and the prison have only giving the Plaintiff some cream for the hemorrhoids and this caused them to be even more sore and start to bleed. The medical staff at the prison then said he had butt sores that were bleeding and not hemorrhoids. This was all done by the doctor at that time.

28. The hemorrhoids have now become cancerous due the NCF staff's neglect.

29. The Plaintiff has now had issues with a big toe that is infected and the nurses have basically left this unattended to the point it is now infected and now that they are trying to treat it, they have almost pulled the nail off his toe making the pain worse, and the condition worse.

30. The Plaintiff's health is worsening every day to the point he can hardly sleep with all the pain and the NCF medical has him coming to health services at least once a day if not more for simple things like vitals and just to ask him how he is doing. These visits to the medical care department is in no way proper medical treatment other than for the prison to claim they are seeing him daily. The care and attention are not at a level needed for the degree of each health problem that this Plaintiff has.

B.

31. The issues of the Plaintiff's medical problems began upon his arrival at NCF. The medical staff began to see him right away, but the reviews and visits were only cursory with no real medical treatment to them. It was also to get his SAM's medications, get blood pressure checks and the like. The SAM/s medications stand for Self-Administered Medication, or a medication that the inmate, such as this Plaintiff can have in his cell and take when prescribed or needed.

C.

32. The Plaintiff states that he has had constant visits to the NCF health services department since he was brought to the NCF prison in July 2021. The plaintiff cannot give all the times and dates he has been to the NCF health services and cannot remember all the reasons he had went there or why he was called over to health services. These numerous medical conditions can probably be answered by the accompanying documents from the health services at NCF on who and why the Plaintiff was summoned to health services at any given time.

**D.**

33. The Plaintiff states and argues that he is bringing this action on the above listed defendants for the violation of his due process rights under the Fourteenth Amendment as the IDOC has implemented and sanctioned several Health Care Policies and Procedures through trained medical personnel and the defendants fail to follow these procedures. All IDOC policies are governed by Iowa Code 2B which invokes the federal constitutional protections of all the amendments as applied to the citizens of the United States. The defendants at all times have acted under the color of state law as the laws are stated herein along with the policies and procedures that apply to this Plaintiff's harm attributed to the negligent actions of the defendants. The Plaintiff has several state created liberty interests that have been violated by the defendants on an ongoing denial of proper medical treatment other than seeing him daily and doing vitals and handing out more and more pills. The lack of proper medical care has led to the Plaintiff being diagnosed with cancer, none of which are being treated in any type of emergency manner, other than more pain pills. They defendants take the Plaintiff on medical trips to the University of Iowa Medical Center, (UIHC) to get treatment of which is modified by the prison staff to a level that the bus rides were basically joy rides, as the needed medical treatment is so modified that it's basically a pacification effort or mode of pacification to the Plaintiff to claim that the NCF medical staff are trying to care for the Plaintiff in some manner. There is no real medical treatment had and the Plaintiff suffers 24 hours per day over the negligent and lingering efforts of the medical staff only doing vitals and pushing pills.

34. The diabetes that the plaintiff suffers from and leg pain which has gone untreated has worsened to the level that the Plaintiff has such sever leg pain that he may and will probably have his legs amputated due the lack of proper medical care.

35. The Plaintiff suffers from partial blindness or is going blind from all the drugs he believes he is being forced to consume on a regular basis.

36. The Plaintiff suffers from hemorrhoid cancer due the lack of any proper treatment from the county jail to the NCF medical staff doing anything to aid in this health problem up and until he was finally taken to UIHC, and a hemorrhoid was finally removed and tested for cancer.

37. This is just short list of all the medical issues that the plaintiff suffers from as he is only getting a cursory care so that the NCF staff can say they are trying to care for him.

38. The dates of the ongoing medical are numerous and will be shown in the accompanying documents with this Complaint.

39. The leg pain is so severe the Plaintiff can hardly walk. He has in just a few months advanced from using a cane, to having a walker and now has to be in a wheel chair to go any distance at all. The diagnosis is that with his bad case of diabetes that went unchecked and basically undiagnosed for so long, the nerves in his legs are deteriorated to the point he will probably lose

one if not both of his legs from the knees down. The first onset of this was superficially diagnosed as nerve issues and he told he would be sent to see a foot specialist for the pain in his feet and another doctor who specializes in these leg nerves of which this was again only rode trips to UIHC and nothing more was done.

40. A vast majority of the medical needs document and prescribed by the doctors and specialists and are forwarded back to the NCF medical department are never followed form some reason or another.

41. The NCF staff have only exasperated these medical conditions into more painful and also cancer causing conditions as the medical treatment at NCF have done the same thing. Other than a few road trips to UIHC for medical visits and to have an out of prison doctor assess his medical conditions, other than removing some hemorrhoids that were constantly bleeding for months on end, did any real medical treatment be accomplished. This is when the Plaintiff found out he had rectal cancer. Plaintiff had been bleeding from the hemorrhoids for months on end, and the treatment after a few months of him complaining of the bleeding and the mess it causes in his clothes and in his bed, did the NCF staff finally give him some female pads to stick between his butt checks. After a few months of this, the NCF staff did finally give him some adult diapers which these were given in small limited packs and at times he was still without them due to the severe bleeding he was suffering from as he would use them up and not get replacements for a day or two when health services would finally call him back over to see him.

42. The Plaintiff has so many medications that he is on, he not only has to go over to the pill line at health services for some of his medications, but has a stack of SAM's meds in his cell as well. With this amount of medication being prescribed and taken, his mental faculties and other health problems are only being exasperated as most of the medications do not seem to be helping him at all.

43. The Plaintiff looks to the case law precedent in **Farmer v. Brennen**, 511 U.S. 825, 114 S.Ct. 1970 (1994). This case represents all the issues and arguments that this Plaintiff is seeking redress on as far as medical needs goes. The standard denial of any proper medical treatment as **Farmer** shows appears daily with this Plaintiff. The medical staff along with all the NCF administrative staff and the director of the IDOC have acted with "deliberate indifference" the seriousness of the medical needs of the Plaintiff. The lack of any proper medical care has created some very serious medical harm and also inflicted some torturous pain and has only exasperated the medical needs of the Plaintiff to the point he now has cancer and is going blind as some of the most severe and torturous conditions which violates the Eighth Amendment of cruel and unusual punishment. This deliberate indifference is had with all of the NCF prison staff, as they are well aware of the potential ongoing health issues, have acted recklessly in giving nothing but the bare minimum care, of which most is another prescription for another medication and not having him seen by any real medical experts for these conditions. As all of these medical issues are denying the Plaintiff humane incarceration, the Eight Amendment of cruel and unusual punishment has attached along the reckless disregard for any real medical treatment being inflicted on him as the prison officials are using a culpable state of mind when making these adverse medical decisions

to push pills instead of seeing and getting proper medical attention for doctors trained in the fields of the medical issues and needs of the Plaintiff. None of these conditions are being done with haste, under pressure or without the luxury of a second chance, **Brennen**, 511 U.S. at, 835-836, 114 S.Ct., at 1978. The Brennen Court held that; "In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health and safety. *Ibid.*, at 834, (other citations omitted).

V.    Injuries

44. The injuries that the Plaintiff has suffered from are a more advanced case of diabetes, more severe leg pains and possible loss of legs below the knees, blurred vision or some loss of vision due to the vast amount of prescribed medications he is on.

45. Not being able to walk without assistance or even move round for longer distances without the use of wheel chair and a person to push him around in it.

46. The Plaintiff has had constant rectal bleeding due to the ongoing denial of medical treatment of his hemorrhoids and which caused great embarrassment and ridicule from other inmates on this condition as he has had bloody pants and underwear that had to be put in biohazard bags for them to be laundered separately from all the other laundry.

47. The Plaintiff has taken some falls and had to have some cuts and bruises looked at and given Band-Aids for.

48. With all the medications it is hard for the Plaintiff to even write his name as he has the shakes so bad he can hardly hold a pen to write with it.

49. The Plaintiff has also had issues with all of the nursing staff at NCF on his toe being infected and then cutting away at his toe nail until it bleeds, and as of 6/22/23, the toe nail has been almost torn off by the reckless disregard of the NCF nursing staff on attending to this medically inflicted injury.

50. Right foot plus the ankle and toes had stinging and burning in them. Was told by a nurse at NCF to live with it. A clear case of medical deliberate indifference. They are now swelling up and with numbness cause issues with walking. The nurses have put the Plaintiff on a wheel chair restriction if he leaves the unit to go anywhere. He does use a rolling walker now within the unit. The condition has advanced to the point the Plaintiff cannot bend his toes to walk properly.

51. The hemorrhoids issues did finally get some other medication for them. This caused them to make his back and bottom break out with sores and bleeding. Also had to use feminine pads for a long time until they issued him Depends, adult diapers, which are given in a very limited quantity as the NCF nurses claim they are expensive and the prison has a budget. Was forced to wash his own under wear and pants as they had blood in them for months, and the jail staff had

him do this to him as well. This supports how long this issue has been going on and been a lingering major medical issue not being treated properly at all.

52. The issue of having worms in the Plaintiff's bowels is still a problem.

53. The Plaintiff's legs and hands with numbness and burning is only worsening with the possibility of one to both legs having to be amputated at least to below the knee.

54. The Plaintiff had a broken tooth, then had more tooth pain and more broken teeth to be extracted which took several weeks to attend to but were finally treated, but the Plaintiff was forced to suffer with this excruciating pain for weeks, which is supportive of the medical deliberate indifference standard.

55. The Plaintiff has for a while now suffered with face burning, and ears ringing and his head pounding with little to know relief given.

56. The Plaintiff has had chest pains, and shortness of breath. There has nothing really been done with this medical issue. The NCF staff claimed they put him on a different medical regimen for this problem but there has been no relief and there is daily pain and periods of shortness of breath each day.

57. The Plaintiff states this list of issues and things with the NCF health services and some dates he can remember. The dates he can recall for pertinent issues are; 6/16/23, 2/19/23, 6/20/23, 6/21/23, 6/22/23, 6/23/23.

58. The Plaintiff was at health services for the constant right foot pain and his toes being very painful. He suffers excruciating pain all the time even laying down inflicts harmful pain and when he walks it is really painful. He sent health services a kiosk and they looked at the foot and started to clean it as it had old dried blood on it. The big toe now has an ingrown toe nail on it. The nurse clipped it and it and now have more pain emanating from it. The nurses have spent many days digging under the nail to get it out. It is so painful after these attempts that the Plaintiff can hardly walk or stand on it for hours afterward. He has sleepless nights because of it.

59. The health serviced kiosk on 6/23/23 was for the pain and being light headed. On 6/23/23 the Plaintiff fell or possibly fainted for the untold time as this is a regular occurrence for him to have this happen. On 6/23/23 had a blackout and was experiencing the shortness of breath again. A correctional officer had to help him up off the floor and called health services. He has no idea how long he was out at this last incident but has these black outs on a regular occasion.

VI.   Relief

60. The Plaintiff seeks the relief of having the NCF and the IDOC as a whole directed to get him some aggressive and positive treatment for alt he conditions plaguing him at this time.

61. The costs of all ongoing medical care be provided by the Iowa Department of Corrections through his incarceration and on his parole or discharge from the IDOC until such time of the conditions mending to the extent they do not exit.

62. Compensation for the continuous pain and suffering that the Plaintiff has endured for months on end and of which each individual medical condition has only worsened with the lack of care in the amount of $1000.00 per day and a lump sum of at least $500,000.00 for the ongoing pain being suffered and the ongoing lack of any real medical attention. The Plaintiff states that all of these compensation awards will not be used to pay any of his restitution or any other costs associated with the state courts on his incarceration.

63. All court costs associated with this action.

64. All attorney fees and any other legal fees associated with this action.

65. All costs associated with what that Plaintiff has paid for in this action.
The Plaintiff "Demands" a Jury Trial on issues triable by a jury.

### VII.   Exhaustion of Administrative Remedies Administrative Procedures

A.   Yes, the claims started in the Buchannan County Jail.

B.   Yes, they have a grievance process which the Plaintiff started using while in jail.

C.   No, only those that originated at the jail at that time. The hemorrhoids, diabetes, tooth problems, the legs and hands burning and stinging and most all of the medical issues are from the county jail.

D.   Yes, the grievances were started at the county jail and the jail refused to answer and I was then sent out to prison without full exhaustion as the jail stopped answering the grievances.

   Yes, the grievances were continued at the NCF prison with the ongoing lack of proper medical care.

E.   With the NCF prison staff and also the county jail. The dates of the grievances that the Plaintiff can recall are on;
   The jail grievances were filed on 5/3/21 and 5/8/21.
   The NCF prison grievances were filed on 3/8/22, 4/29/22, 4/26/22, 9/12/22.

   Not sure anymore as the Plaintiff's memory with his head pains have caused him to forget things and not be able to remember details anymore other than the constant lack of any medical care on all issues as listed above.

All were declined for some reason or another. Nothing was really done about any of the correctiveness needed for the request for more and proper medical care.

**VIII.   Previous Lawsuits**

A. No, on the 3-strikes rule

B. Yes.

In the Federal Northern District of Iowa on the Buchanan County Jail. See Case of 6:21-cv-02018-LTS.

Judge Leonard Strand

The case is titled. Russell Larson, v. Buchanan County Jail, et al.,

The filing date was December 2020

The case is still pending.

C. No other cases have been field on this matter.

**IX. Certification and Closing**

Under Federal Rule of civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief, that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

    A.    For Parties Without an Attorney

        I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

        Date of signing: _JUNE 28-2023_

Signature of Plaintiff: _Russell Larson 6464117_

Russell Larson
6464117
P.O. Box 218
Newton, IA. 50208

NEWTON CORRECTIONAL FACILITY
PO BOX 218
NEWTON IOWA 50208



CLERK OF COURT
UNITED STATES DISTRICT COURT
U.S. COURTHOUSE
PO BOX 9344
DES MOINES IOWA
50306-9344

X-RAYED & CLEARED BY U.S.M.S. BKM

CASE NO. 4:23-cv-00175-RGE-HCA